# Delaware, Lackawanna and Western Railroad Co. *versus* Napheys

1. While it is the duty of a railroad company to provide safe and convenient means of ingress and egress to and from the cars, it is equally the duty of passengers to use the means thus provided with reasonable circumspection and care.

2. The general rule is, that one who alleges negligence as the basis of a claim for damages, is bound to prove the fact alleged and the extent of the injury, if more than nominal damages are claimed; but in some cases, slight proof only is required to justify a presumption of negligence.

3. If a passenger seated in a railroad car is injured by a collision, or by a defect in any part of the machinery, a *prima facie* case of negligence is established, and the onus of disproving it is cast upon the company.

4. Where a train has come to a stop and a passenger, on stepping from the lowest step of the platform of the cars to the ground, fractures her knee-cap, without any apparent external cause, no presumption of negligence is raised.

April 2d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the court of Common Pleas of *Monroe county:* Of July Term 1878. No. 149.

Trespass on the case by George D. Napheys and wife against the Delaware, Lackawanna and Western Railroad Company, to recover damages for injuries to the wife of plaintiff, alleged to have been caused by the negligence of defendant. The facts were, in substance as follows: The plaintiff and his wife were passengers on a train of defendants. The train was destined for Stroudsburg, where it arrived in safety. Mrs. Napheys was assisted by her husband to alight from the car. On stepping down from the lowest step of the car platform, she advanced her left foot first to the ground, leaning her right foot upon the step and while in that position, without any apparent cause, her right knee-cap snapped and was fractured. There was no slipping or stumbling, or any external injury by a blow or force of any kind. In consequence of the injury Mrs. Napheys was confined to the house for about a year, suffering much pain, and the injured limb was permanently weakened. On the part of the defendant there was evidence that prior to the accident Mrs. Napheys had dislocated the knee-cap of her left knee while walking on the street; that she was confined to the house for several weeks by reason of the injury; that she was lame for some time thereafter, and that at the time of the injury at Stroudsburg, she was still wearing an elastic knee-cap over the left

knee under the advice of her physician. Much testimony was given by defendant showing that the height of the lower step of the platform was not greater than that of the platforms of the cars in use by the principal railroads in the United States, and not so great as those used on several roads. The evidence, which was not contradicted, showed that the height from the top of the lower step to the rail was sixteen inches, and to the ground where Mrs. Napheys alighted not more than twenty-one inches, and probably not more than nineteen. A number of railroad conductors and ticket agents on other roads, were examined, who testified that a distance of twenty-one inches to step from the cars was a perfectly safe distance for travellers to descend; that elevated platforms, especially platforms between tracks, were more dangerous than no platforms at all, and were being removed from all the principal roads. They testified also that the steps ordinarily in use varied from nineteen to twenty-six inches to the ground, and that although they had carried and delivered many millions of passengers they never knew of a single instance in which the fracture of a knee-pan or any other injury occurred by stepping from the cars they were running. It was in evidence also that many thousands of passengers had alighted at this very station and from the defendant's own cars without a single accident of any description to the passengers. And further, that after this occurrence the defendant adopted a new style of platform, called the Miller platform, which is four to six inches higher from its lowest step to the ground than that of the car from which Mrs. Napheys stepped, and that this platform was still in use, and not a single accident had ever happened to any passenger alighting therefrom. The train on which the plaintiffs rode was a northern bound train, and it was shown that all northern bound trains passed the Stroudsburg station on the outer track, which was furthest from the depot, and that ten thousand persons annually alight from northern bound trains at the place, where Mrs. Napheys alighted, without a single accident having occurred. The defendant also called carriage-makers, livery-stable keepers, and others, who testified that the height of the step from carriages, omnibusses, farm-wagons, and other similar vehicles was from eighteen to twenty-four inches, and that no such accident had been known to happen to any person descending therefrom.

In rebuttal, the plaintiff gave evidence to show that the height, from the step to the ground, was from twenty-five to twenty-nine inches.

The plaintiff presented the following points, to which are appended the answers of the court:

1. The defendant was not only bound to convey Mrs. Napheys safely to her destination, but to furnish her with a safe and convenient means of leaving the car, if human foresight and prudence could so provide, and in determining what is a safe and convenient

[Del., Lack., &c., Railroad Co. *v.* Napheys.]

moae of egress · the criterion is not what is the custom on other roads, nor how much strain other people have sustained in various ways without injury, but what did the safety and convenience of Mrs. Napheys require.

Ans. "The first clause of this point is affirmed. As to the second clause, while the custom on other roads, or the amount of strain other people have sustained, are not the criterion by which to determine what is a safe and convenient mode of egress, in this particular case, yet such custom of other roads is evidence for the jury to consider in passing upon the question of negligence of the defendant in the case trying." (First assignment of error.)

2. A carrier of passengers is bound to the utmost degree of care and prudence in providing means of egress from its cars. Any want of such care and prudence renders the company liable to respond in damages for an injury resulting therefrom.

Ans. "Affirmed." (Second assignment.)

3. That the defendants, as carriers, are bound to give secure access to, and egress from, their passenger cars, so that a passenger carefully descending from the cars may do so in safety, and if the jury believe that the height from the lower step of the car to the ground was so great that Mrs. Napheys, in attempting to descend with reasonable care, fractured her knee-cap in consequence of the height of the step, the defendant is liable for such damages as were sustained by the plaintiff in consequence of the injury.

Ans. "Affirmed." (Third assignment.)

4. The proof in the case being uncontradicted that Mrs. Napheys, without any negligence on her part, received an injury in descending from the cars of the defendant, it raises the presumption prima facie that the defendant was guilty of negligence and the burden of proof is upon the defendant to show that it was not guilty of negligence.

Ans. "Negatived, for the reason that I cannot say that the evidence as to the negligence is uncontradicted." (Fourth assignment.)

5. If the jury believe that Mrs. Napheys, without any negligence on her part, received an injury in descending from the cars of the defendants, the defendants were, prima facie, guilty of negligence and the burden of proof is upon them to show that they were not guilty of negligence.

Ans. "Affirmed." (Fifth assignment).

Among defendant's points was the following, with the answer of the court thereto:

6. If Mrs. Napheys was subject to any peculiar condition of the bones or body, which rendered her more liable to bony fracture than the generality of persons, the defendant was under no obligation to construct their cars or platforms with reference to such abnormal condition, and if the injury of Mrs. Napheys was produced in consequence of that condition, the defendant is not respon-

sible for such result, and in that event there can be no recovery in this action.

Ans. "I cannot affirm this point. While I can assent to the first part of the proposition, I cannot affirm it as a whole, for the reason that though the facts should be as stated in the first clause, and that the accident would not have happened if she had not been in such condition of bones or body, yet the liability of the company depends upon the question of negligence, under the evidence and all the circumstances of the case." (Sixth assignment.)

In the general charge the court, Dreher, P. J., inter alia, said: "Railroads for carrying passengers are not constructed for a particular class or size of persons. Large and small, lean and fleshy persons, those of large and those of small muscles and different temperaments, may travel, and railroad companies in constructing their roads and means of access to and egress from their cars are presumed to know that all such persons will travel on their road." (Eighth assignment.)

"It was argued, in behalf of the plaintiffs, that the injury to Mrs. Napheys occurred in consequence of the step to the platform of the car being too high from the ground. On the other hand, it is alleged by the defendant that the step was no higher than those in use by many other railroads, and not so high as some other companies use, and that the accident did not result from any unusual height of the step. The evidence upon the question of negligence of the company, as respects the height of the step, is for the jury, and, in passing upon this question, you are to take into consideration the height of the steps in use by other railroad companies. The question is, whether the accident occurred from the negligence of the company alone. If it did, then the defendant is liable. (Eleventh assignment.)

"In the case of Mrs. Napheys, that is, the suit in which she and her husband are joint plaintiffs for her use, the law has no fixed rule for assessment of damages. You should allow her such reasonable damages as under all the circumstances you may think she is entitled to, for the pain and suffering endured by her in consequence of the injury." (Fourteenth assignment.)

The verdict was for plaintiff for $2000. The defendant took this writ, among its assignments of error being those above noted, and that the court erred in not making an adequate presentation to the jury of the facts of the case, and in not explaining to them the meaning of negligence and contributory negligence as applicable to the circumstances of the case.

*William Davis*, *W. H. Jessup* and *Henry Green*, for plaintiff in error.—The control of the defendant over the person and movements of the plaintiff ceased when the train reached its destination and the further act of leaving the car was that of the defendant alone.

[Del., Lack., &c., Railroad Co. v. Napheys]

Their height of steps which general experience demonstrates as being safe and secure for persons to alight from, ought to be the criterion by which the rule of duty should be determined, as a railroad is only bound to give a reasonable opportunity to alight in safety: Fairmount and Arch Street Railway Co. v. Stutler, 4 P. F. Smith 375; Johnson v. West Chester and Philadelphia Railroad Co., 20 Id. 357; Empire Transportation Co. v. Wamsutta Oil Refining and Mining Co., 13 Id. 14; Meier v. Pennsylvania Railroad Co., 14 Id. 225; Pittsburgh and Connellsville Railroad Co. v. McClurg, 6 Id. 294.

The practical meaning of the instruction of the court was, that if all other human beings were able to descend from the steps of our car without fracturing a knee-cap, nevertheless if Mrs. Napheys was so constituted that she could not do so without that consequence happening, we were guilty of negligence. In other words, the test of our legal duty is the ability, or disability rather, of this one person. This was error: Railroad Co. v. McClurg, supra; Bogle v. Winslow, 5 Phila. 136; Tennery v. Pippinger, 1 Id. 543. A railroad company, in the performance of its duty, is not to be held to the impracticable, nor to results out of an ordinary or natural sequence: Tuller v. Talbot, 23 Ill. 357; Pittsburgh, Cinn. & St. Louis Railroad Co. v. Thompson, 56 Id. 138: McGrew v. Stone, 3 P. F. Smith 441; Ford v. London and Southwest Railroad Co., 2 F. & F. 730; Le Barron v. East Boston Ferry Co., 11 Allen 312; Curtis v. Rochester & Syracuse Railway, 18 N. Y. 534: 2 Redfield on Railways 430; Frankford & Bristol Turnpike Co. v. Philadelphia and Trenton Railroad Co., 4 P. F. Smith 345. We were entitled to an explicit answer to our point in regard to Mrs. Napheys's physical condition: Noble v. McClintock, 6 W. & S. 58; Carpenter v. Mayer, 5 Watts 483; Tenbrooke v. Jahke, 27 P. F. Smith 392; Hood v. Hood, 2 Grant 229. The evidence upon which this case was submitted was clearly insufficient and ought therefore to be rejected: Altwell v. Wilcox, 8 Haines 117; Lower v. Clement, 1 Casey 63; Silveus v. Porter, 24 P. F. Smith 448; Cauffman v. Long, 1 Norris 72; Smith v. Bank, 98 Mass. 605.

*E. J. Fox* and *S. Holmes*, for defendants in error.—The question is whether there was negligence in the construction of the platform. A railroad company is bound to provide safe and convenient places of ingress and egress to and from its trains: Pennsylvania Railroad Co. v. Zebe, 9 Casey 326 : Pennsylvania Railroad Co. v. Aspell, 11 Harris 149; McDonald v. C. & N. W. Railroad Co., 26 Iowa 124; Knight v. P. S. & P. Railroad Co., 56 Maine 234; Memphis & Charleston Railroad Co. v. Whitfield, 44 Miss. 466; Sherman & Redfield on Negligence, sects. 275, 277 : Wharton on Negligence, sect. 77; Hulbert v. New York Central Railroad Co.,

40 N. Y. 145. The burden was on defendant to disprove negligence: Sullivan *v.* Philadelphia and Reading Railroad Co., 6 Casey 234. A sick or disabled person is entitled to more care than one in good health: Sheridan *v.* Brooklyn City and Newtown Railroad Co., 36 N. Y. 39; O'Mara *v.* Hudson River Railroad Co., 38 N. Y. 445. A passenger is entitled to the greatest possible care: The New World *v.* King, 16 Howard 469; Longmore *v.* Great Western Railway Co., 19 C. B. (N. S.) 183. An omission to charge upon a particular point, for which there was no request, cannot be assigned for error: Lilly *v.* Paschal, 2 S. & R. 394: Poorman *v.* Smith, Id. 464; Kean *v.* McLaughlin, Id. 469; Carothers *v.* Dunning, 3 Id. 373; Fisher *v.* Larick, 7 Id. 99; Morris *v.* Travis, Id. 220; Rahn *v.* McElrath, 6 Watts 151; Dennis *v.* Alexander, 3 Burr 50; Fisher *v.* Filbert, 6 Id. 61; Klein *v.* Franklin Insurance Co., 1 Harris 247; Davis *v.* Bigler, 12 P. F. Smith 242; Cooper *v.* Altimus, Id. 486.

A railway company using cars, the steps of which are elevated much above the ground, is undoubtedly bound to provide platforms upon which passengers may step, and which are long enough to accommodate all the cars of an ordinary train, so that a passenger in any car may easily reach the platform; Shear. & Red. on Neg., sect. 277; Foy *v.* L. B. & S. C. Railroad Co., 18 C. B. (N. S.) 225. See to same effect; Nicholson *v.* Lancashire & Yorkshire Railway Co., 3 Hurls. & Colt. 534; Burgess *v.* Great Western Railway Co., 6 C. B. (N. S.) 923; Jeffersonville, Madison & Ind. Railroad Co. *v.* Riley, Adm'x., 39 Ind. 569: Knight *v.* P. S. & P. Railroad Co., 56 Maine 234.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

The claim of the defendants in error for damages in this case is based on an accident of rather extraordinary character. The train on which they were passengers arrived safely at its destination in daylight. The other passengers had left the car, and Mr. and Mrs. Napheys were the last to go out. He alighted first and assisted her down the steps from the front platform of the car. While her right foot rested on the lower step and just as her left touched the ground, her right *pattella* or knee-cap was fractured and she was thus suddenly disabled. The fracture was transverse and entirely across the bone. At the same place and under similar circumstances, thousands of passengers had before alighted from the cars in safety, and, so far as appears, without inconvenience; but it so happened that Mrs. Napheys unfortunately met with the singular accident which undoubtedly caused her a great deal of inconvenience and suffering. Whether the injury resulted wholly from the negligence of the railroad company, without any fault on her part, or whether it was one of those fortuitous events, against

which in the exercise of reasonable and proper care it is impossible to guard, and for which neither party is to blame was the question to be determined by the jury; and while we think there was sufficient in the facts and circumstances disclosed by the testimony to justify their submission to the jury, it is not so clear that they would have reached the conclusion they did if it had not been for the instructions complained of in the fourth and fifth assignments of error. In the latter the jury were told that if Mrs. Napheys, without any negligence on her part, received an injury in descending from the car, the company was prima facie guilty of negligence, and the burthen of proof was on the defendant to show that it was not guilty. The fourth point was in substance the same, with the exception of assuming, as an uncontradicted fact, that there was no negligence on her part. This assumption of fact the learned judge refused to adopt, but in other respects affirmed the proposition in its full length and breadth. In view of the uncontradicted facts in the case, we think this instruction was calculated to prejudice the defence. The general rule is that a party who alleges negligence as the basis of a claim for damages is bound to prove the fact alleged, and the extent of the injury, if more than nominal damages are claimed; but in some cases slight proof only is required to justify a presumption of negligence. The mere circumstances attending the injury when put in proof may be enough to cast the burthen of exculpation on the defendant. If a passenger seated in a railroad car is injured in a collision, or by the overthrow of the car, the breaking of a wheel, axle, or other part of the machinery, he is not required to do more in the first instance than to prove the fact and show the nature and extent of his injury. A prima facie case of negligence is thus made out, and the onus is cast upon the carrier to disprove negligence. It was accordingly said in Sullivan v. The Philadelphia and Reading Railroad Co., 6 Casey 234, when a railroad company undertakes the transportation of a passenger for an agreed price, "the contract implies that they are provided with a safe and sufficient railroad to the point indicated; that their cars are staunch and roadworthy; that means have been taken beforehand to guard against every apparent danger that may beset the passenger, and that the servants in charge are tried, sober and competent men. When in the performance of this contract a passenger is injured, without fault on his part, the law raises prima facie a presumption of negligence, and throws on the company the onus of showing that it did not exist." It is reasonable that it should be so, because the company has in its possession and under its control, almost exclusively, the means of knowing what occasioned the injury and of explaining how it occurred, while as a general rule, the passenger is destitute of all knowledge that would enable him to present the facts, and fasten negligence on the company, in case it really existed. The facts of the present case are very

[Del., Lack., &c., Railroad Co. *v.* Napheys.]

different. The cars were at rest on the track; there was no jar or breaking of machinery; Mrs. Napheys, with the assistance of her husband, was descending the steps from the platform of the car. They had every opportunity of seeing and knowing where she was going, and controlling her movements. If the lower step was inconveniently or dangerously high for her in the condition she was, she and her husband had as good an opportunity as any one else of knowing the fact. If they had even a suspicion that it was in the least degree unsafe for her to take the last step, there was no urgent necessity for her to do so. The train had reached its destination and there was no occasion for haste in leaving the car. If they had any apprehension of danger, or even inconvenience in descending from the lower step, there was nothing to prompt them to incur the risk. They might have called on those in charge of the train to provide a better and more convenient means of egress, if they deemed it necessary. Taking the uncontradicted facts of the case, as they were presented, there existed no reason for relaxing the general rule that he who alleges negligence as the basis of a claim for damages, is bound to prove it affirmatively.

The circumstances of the case were very peculiar and demanded great care in explaining to the jury the relative rights and duties of the parties. While on the one hand it is the duty of the company to provide safe and reasonably convenient means of ingress and egress to and from its cars, on the other hand it is equally the duty of passengers to use the means thus provided, with reasonable circumspection and care.

Judgment reversed, and a *venire facias de novo* awarded.

Justices MERCUR and GORDON, dissented.

SHARSWOOD, C. J., PAXSON and WOODWARD, JJ., concur in the judgment, but would not award a *venire de novo*, as they think there was no evidence of negligence in the defendants.