## NONANTUM WORSTED CO. v. C. J. WEBB & CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 22, 1889—Decided February 4, 1889.

1. Where an insolvent debtor has two accounts with the same person, one on which the balance is in his favor, and another on which the balance is against him, he may not assign the right to recover the balance due upon the former, except as subject to the balance due upon the latter.

(a) A wool-dealer had two accounts against defendant company, one an account of sales on which the balance was in his favor, the other an account of a consignment without sale and advancements thereon, with the balance against him, when suit was brought by an assignee of the balance due on the former account:

2. The evidence being uncontradicted that the consigned wool was on hand and unsold with the defendants when suit was brought, and that up to

vancements, proof that after the suit was brought the defendants rendered a statement crediting the value of the wool at a certain rate as of the date of the consignment, was not evidence of a conversion entitling the plaintiff to the benefit of evidence that the wool was of greater value than the rate allowed.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 171 July Term 1888, Sup. Ct.; court below, No. 7 December Term 1887, C. P. No. 4.

On September 24, 1887, Charles J. Webb and Harry E. Lincoln, trading as C. J. Webb & Co., brought foreign attachment against the Nonantum Worsted Co., attaching Thos. Dolan & Co. as garnishees. The defendant company appearing, the plaintiffs filed a statement and the cause was put at issue on February 29, 1888, under the plea of non assumpsit. On April 18th, an order was made, amending the record by adding to the title of the plaintiffs, " assignee of Frank J. Primrose."

At the trial on April 19, 1888, the plea of set-off was added, and the facts claimed to be shown in the evidence were in outline as follows, to wit:

On July 9, 1887, Frank J. Primrose, a dealer in wool at Philadelphia, being indebted to C. J. Webb & Co., in consideration thereof sold, assigned and transferred to said C. J. Webb & Co., inter alia, an indebtedness to him of the Nonantum Worsted Co., of Boston, upon an account for wools sold to said company. The balance claimed by the plaintiffs to be due to Primrose upon this sales account with the defendants, at the time of the assignment, was $2,024.34.

The defendants admitted that upon the account for wool purchased of Primrose there was due him a balance of $1,091.43, but claimed that this was more than counterbalanced by a sum due the defendants from Primrose on account of a transaction which briefly was as follows :

On June 22, 1887, Primrose, without any authority to do so, had caused about 92,000 pounds of Texas wool, then in transit to him, to be billed and shipped to the defendants, and drew for $19,134.60. The defendants refused to protect the draft unless Primrose should put up a margin of $5,000, but after further correspondence, they agreed to take care of the draft

on receiving $2,000 margin, which was supplied, and the draft was subsequently paid. When C. J. Webb & Co. received the assignment above referred to from Primrose, they at once served notice thereof upon the defendants. On July 18th, the defendants telegraphed and wrote Primrose that the wool, which had arrived, was not up to sample and to send further margin, saying: "The fact is we want our money, and we would much rather you would pay the advances and take the wool or have Mr. Webb do so. You know we protected your draft out of pure friendship, and not because we wanted the wool, or wanted any thing to do with it." Correspondence, either with Primrose or with C. J. Webb & Co., continued until the time suit was brought, and then, and at the trial as well, the wool still remained with the defendants.

On January 15, 1888, a statement was sent by the defendant company to C. J. Webb & Co., of their entire unsettled business with Primrose, in which statement the wool was credited to Primrose, as of "June 22, 1887, by 393 bags, $12,997.18," or fourteen cents per pound, and showing a balance due the defendants of $5,530.70. The actual value of the wool being disputed, evidence was introduced upon the subject on both sides.

At the close of the evidence, the court, ARNOLD, J., charged the jury:

The suit is to be treated as a suit brought by Frank J. Primrose, against the Nonantum Worsted Company of Boston. Primrose bought and sold wool. He had two accounts against the company, defendant. One was what is called a sales account; that is to say, for goods sold by him to the company. Then, there was another account that is called a consignment account; that is to say, goods shipped by him to them, which they were to receive, and sell for him or take from him at a price agreeable to both. Upon the sales account, which has been sued upon here, the plaintiff, Primrose, or rather Webb & Co., assignees of Primrose, who stand in Primrose's shoes, claim a balance of $2,024.34. That is to say, allowing such claims as the defendant company made and Mr. Primrose allowed, there was a balance due, according to their claim, with which they start out here, of $2,024.34.

Now, the defendants also claim $599.13 on a transaction called the 124 bag lot. That the plaintiff, Mr. Primrose or Webb in his place, disputes, and it is for you to say whether on the whole evidence it ought to be allowed or not. The defendants also claim other allowances: $29.88; $44.60; $136.65; $4.80; $70.80; $20.60; $14.00; $12.45—a total of $932.91; leaving due on the sales account, according to the defendants' statement, that is, the Nonantum Worsted Co.'s statement, $1,091.43.

If, I say, with this sales account, you take the plaintiffs' statement of claim and find for them, their claim is $2,024.34; but if you give the defendant company the allowances which they claim on some of these items of sales, the balance is reduced to $1,091.43. It is therefore for you to say, in the beginning, how much is due on the sales account. Is it $2,024.34 or is it $1,091.43? Having established that as the beginning, your next question and your next duty will be, to inquire whether that has been wiped out by what is called over-advances on the 393 bag transaction. It seems that that lot of Texas wool came to Primrose from Texas, and he sent it on without previous notice to the defendants, and drew on them for the amount of the draft, of which you have heard so much. Some correspondence by telegraph and letters took place between the parties before the defendants agreed to honor that draft; however, they did agree to honor it, and did pay the draft, amounting to $19,134.69. They also paid freight on this shipment, amounting to $1,691.75, making a total of $20,826.44, which they advanced upon that shipment, less $2,000.00, which Primrose paid back to them upon their draft. Therefore, the balance advanced by the Nonantum company to Mr. Primrose was $18,826.44.

The defendant company have also claimed the sum of $100.12 upon that lot, for moneys which they paid to insure it in transit. They say they had to borrow the money, and they could not have raised the money to pay this large draft of $19,134.69, unless they had it insured; so that the person with whom they hypothecated it to get the money, had not only the right to the goods, but had it insured against loss in transit; and if you believe the defendants' statement that they could not raise the money except by insuring these goods,

Charge of Court below.

for the purpose of borrowing money, you may, if you see fit, allow that claim. Certainly it would be an equitable claim, and such as a jury has a right to allow to parties under the circumstances, notwithstanding it had already been insured. For, remember that this company in Boston was, at that time, an unwilling party to this transaction; that is, these 393 bags of wool were sent to them without warning. They were driven on the spur of the moment to borrow the money to honor the draft which was drawn upon them, and as they say, to help Mr. Primrose; and if, in order to do that, in order to get the money to pay Mr. Primrose's draft, they paid $100.12 for insurance, you have a right to charge that to Mr. Primrose. It is for you to say whether that should be so charged or not. If you find that the reasons assigned for so insuring that shipment were good reasons, then they form a ground why Mr. Primrose should be charged for the insurance; and therefore that would make the claim of the Nonantum company against Primrose on the 393 bag lot, $18,926.56.

Now, what was that wool worth? It was shipped to, and received by this company, last July. It has not yet been sold. They have it on hand, and they say that they have now taken it as their own at 14 cents per pound. The question therefore for you to determine (though they have taken it—converted it, as we term it in law, to their own use), at what amount should it be charged. It was billed to them, as Mr. Primrose says, at 21 and 23 cents a pound, according to quality, and the defendants took it at 14 cents a pound. Now you have heard all the testimony as to what it was worth. You have heard what has been said by persons who said 16 cents, and whether they would give more or not. You have also heard it said that Mr. Hall and Carleton wanted 21 or 22 cents per pound. One witness said the defendants said it was worth that much; another said they did not say that it was worth that much, but wanted that much for it. When merchants are selling their goods they are not particular about the phrases they use; in fact, when tradesmen say they want so much for a thing it is a matter of opinion, and it is not considered immoral to think that a thing is worth so much, when he wants to sell it, particularly if he has got a good bit of money in it. However, it is for you to say what the wool was worth.

Charge of Court below.

Was it worth 22 cents per pound; 21 cents per pound; 20
cents per pound; 18, 16, 14 cents per pound when it was
received by the Nonantum Co.? The evidence shows that the
market has gone down since that time; there has been no in-
crease of value. If there has been an increase the defendants
would be chargeable with the highest price since; but all the
witnesses said that the market had gone down and that the
highest market price was in last July, and therefore the whole
question comes down to the market price of the wool in last
July; and at what price it should be charged.

\*   .   \*   \*   \*   \*   \*   \*   \*

The court is requested by Mr. Terry, counsel for defendants,
to instruct the jury upon the following points:

1. The attaching creditors, Webb & Co., stand in the shoes
of Primrose, and can only claim what Primrose can lawfully
claim, and if there was nothing due to Primrose from the No-
nantum Worsted Company at the time of the assignment of
Primrose's claim against them to Webb & Co., your verdict
must be for the defendants.

Answer: Affirmed.

2. At the time, July 11, 1887, defendants received notice of
the assignment of Primrose to C. J. Webb & Co., the advance
by the Nonantum Worsted Company to Primrose had been
made, and the claim of the Nonantum Worsted Company for
over-advances legally arose, although neither Primrose nor the
Nonantum Worsted Company may have known at said time
the real value of the wool; and if the jury believe that, instead
of the Nonantum Worsted Company being indebted to Prim-
rose, the latter was indebted to the Nonantum Worsted Com-
pany, then C. J. Webb & Co. took nothing by the assignment,
and your verdict must be for the defendants.

Answer: Affirmed.

3. Primrose having admitted that the claims of the defend-
ants against him for over-advances on the 393 bag lot of wool
are valid, and that said wool has never at any time been of
sufficient value to overcome the apparent balance alleged to
exist by the assignment to C. J. Webb & Co., then your ver-
dict must be for the defendants.

Answer: Denied.[1]

4. The evidence fails to show, that at the time of the assign-

ment to C. J. Webb & Co. by Primrose, there were any moneys due to Primrose by the Nonantum Worsted Co., and your verdict must be for the defendants.

Answer: Denied.[2]

The jury returned a verdict for the plaintiffs for $2,024.34. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendants took this writ assigning as error:

1, 2. The answers to the defendants' third and fourth points.[1] [2]

*Mr. John G. Johnson* (with him *Mr. Henry C. Terry*), for the plaintiffs in error:

Upon the evidence, which more fully appears in the opinion of the court, counsel contended:

1. That C. J. Webb & Co. had no right of action in their own names against the defendant company.

2. That Primrose's assignment did not pass to C. J. Webb & Co. any interest in the wool belonging to the assignor, at that time in the possession of the defendants as pledgees.

3. That there was no proof of any conversion by the defendants prior to the bringing of the suit.

4. That there was no proof of conversion at any time.

5. That there was no proof whatever of any value of the wool sufficient to pay the advances after allowing Primrose the $2,024.34 claimed to be due to him.

*Mr. Joseph DeF. Junkin*, for the defendants in error:
Replied to the positions of the plaintiffs in error, seriatim.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a writ of foreign attachment against the Nonantum Worsted Company as defendants, and Thomas Dolan et al., garnishees. The defendants appeared; the plaintiffs filed a claim in assumpsit, to which the defendant company pleaded non-assumpsit and set-off. Upon this issue the case went to trial below with the result of a verdict in favor of the plaintiffs for $2,024.34.

The material facts necessary to a proper understanding of the

case, may be briefly stated as follows: The defendant company is a corporation doing business in the city of Boston. Prior to June, 1887, they had divers business transactions with one Frank J. Primrose, doing business in Philadelphia, and were indebted to him (said Primrose) in a sum estimated from one to two thousand dollars in round numbers. On June 22, 1887, without any pretence of authority, Primrose sent to the company at Boston a large lot of Texas wool, some ninety-two thousand pounds, then in transit, consigned to him by some third person, but which neither he nor the said company had ever seen, and at the same time, and with a like absence of authority, drew upon the company a draft of $19,134.69. The company refused to accept the wool or to protect the draft, and a correspondence by wire and letter immediately took place. It is not necessary to refer to this correspondence in detail. It is sufficient to say that as a matter of pure friendship and accommodation to Primrose, the company, not having yet seen or received the wool, offered to take it upon consignment and protect the draft, upon Primrose putting up $5,000 cash as a margin. This he was unable to do, and finally the company accepted and paid the draft upon his giving them $2,000 as a margin. When the wool arrived at Boston it was found not only not up to sample, but an exceedingly bad lot. It was so full of grease, sand, and dirt, that several bags of it on being cleaned lost in weight from 72 to 78 per cent. This fact was proved and not contradicted. Upon ascertaining this the company demanded more margin which was not furnished, and from that time to the trial of the case below appeared to have constantly demanded an increased margin, or that Primrose should repay the advances and take the wool away. He did neither, but on July 9, 1887, assigned his claim for certain other wools, or the proceeds thereof in the hands of the company, to Charles J. Webb & Co., alleged creditors of his.

Webb & Co. commenced this suit of foreign attachment, claiming there was a balance due Primrose from the worsted company of about $5,000. The suit was brought by Webb & Co. in their own name. Subsequently the record was amended by adding the words "assignees of Frank J. Primrose." They appear to have proceeded upon the theory that as assignees of Primrose they were entitled to recover the amount of the pro-

ceeds or value of the wool in the hands of the company, without regard to the state of accounts between the latter and Primrose. In other words, that even if the accounts between Primrose and the company showed the former indebted to the latter, Webb & Co. could nevertheless recover against the company for a particular claim in the account. It might be very convenient for an insolvent debtor to separate his assets from his liabilities, and assign the one and ignore the other, but I apprehend there would be found serious difficulties in carrying out such a scheme. All that Primrose could lawfully assign was the balance, if any, in the hands of the company, after their accounts were adjusted.

It is evident that this suit cannot be sustained in the name of Webb & Co. At this stage, however, we are disposed to treat the record as amended, and regard it as a suit brought by Primrose to the use of Webb & Co. This places Primrose on the record as the legal plaintiff for all practical purposes, and hereafter when I refer to the plaintiff, I mean Primrose. With this in view, I will refer briefly to the trial below. ·

The amount admitted by the defendants to be due the plaintiff on the particular sales of wool embraced in the assignment to Webb was $1,091.43; the amount claimed by the plaintiff was $2,024.34. The defendants contended, however, that all this and much more was swallowed up by their advances to plaintiff on the lot of wool sent to them by him on June 22d; that the advances, freight, insurance, etc., had not been repaid; that they had never sold the wool, although they had repeatedly attempted to do so, and that it was still in their warerooms in Boston, subject to the plaintiff's order, and that it could not be sold for a sum sufficient to cover their advances.

The plaintiff contended that the defendant company had converted the wool to its own use. The evidence, and the only evidence offered in support of this allegation was a statement of account sent by the company to Charles J. Webb & Co., on January 15, 1888. It is headed " Frank J. Primrose in account with Nonantum Worsted Company." On the credit side of the account appears the item under date of June 22d, " By 393 bags, $12,997.18." This I understand to be 92,000 pounds of wool at fourteen cents, less freight and charges paid. Because the plaintiff was thus credited the inference is drawn,

and I have no doubt was used effectively before the jury, that the defendants had converted the wool to their own use, while the evidence is uncontradicted, that it had not been either sold or converted, but was in the defendant's hands as consignees of the plaintiff at the time of the trial. The fact seems to have been overlooked that for six months prior to the sending of this account, the defendant company had been demanding and begging both the plaintiff and Webb & Co. to put up a sufficient margin or repay the advances and take the wool away. The sum of $12,997.18 is merely the valuation which the defendants put upon the wool, or are willing to take or estimate it at. How could the defendant company show that they had over-advanced upon it, except by sending an account on which a consignee's valuation had been placed upon the wool?

Following up his theory of a conversion, the plaintiff attempted to show that the wool was worth much more than fourteen cents, and succeeded with the jury as the verdict shows. I do not know exactly what price they did place upon it, but as I understand the figures it must have exceeded sixteen cents to enable them to find a verdict for the plaintiff for any sum. This is immaterial, however.

The verdict in view of the evidence was extraordinary. The plaintiff himself testified that he never in his life saw a lot of wool that had as much sand and dirt in it; that it was an outrageous swindle upon him, and through him, though innocently, an equal swindle upon the defendants; that it was not worth more than from fourteen to sixteen cents per pound, probably not over fourteen, in June, 1887, and that it has been constantly depreciating since that time. He nowhere asserts in his testimony that the defendants converted the wool, or even hints at such a thing. It is true there was testimony that a Mr. Rawitzer went to Boston in company with Mr. Webb, on August 2, 1887, and offered defendants sixteen cents a pound for the wool. But this was evidently for the purpose of manufacturing testimony. The plaintiff himself discredits his own witness, and said upon the stand that Webb (use plaintiff) had told him that he (Webb) shook in his shoes, or some equivalent expression, for fear the offer of sixteen cents which either he or Mr. Rawitzer made to the defendants would be accepted.

Upon a careful examination of the case we are of opinion

there was no evidence of a conversion to submit to the jury. In this view the question of the value of the wool becomes immaterial. I am inclined to think that some of the confusion in the case upon the trial below was caused by overlooking the distinction between legal and use plaintiffs. Both of the assignments of error are sustained.

Judgment reversed.