## W. S. GRAHAM ET AL. v. PENNSYLVANIA CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
No. 1 OF ALLEGHENY COUNTY.

Argued October 31, 1890—Decided January 5, 1891.
[To be reported.]

1. The admissibility of the opinions of witnesses, expert and other, must always rest in clear necessity. In those matters where mere descriptive language is inadequate to convey to the jury the precise facts, or their bearing on the issue, a witness may be allowed to supplement his description by his opinion, to put the jury in position to determine the facts in issue.

2. But, when the circumstances are such that they can be fully and accurately described to the jury, and their bearing on the issue estimated by persons without special knowledge or training, opinions of witnesses, expert or other, are inadmissible : Beatty v. Gilmore, 16 Pa. 463, explained; Franklin Ins. Co. v. Gruver, 100 Pa. 266, and other cases, followed.

3. Where the plaintiff, on alighting from a railroad train upon a narrow platform, walked obliquely towards its edge, fell over an offset upon a broader platform and was injured, it was error to permit witnesses, describing the construction of the platforms and their surroundings, to testify whether in their opinions the construction was dangerous or not.

4. It was also error, in such case, to refuse to charge that " if the jury believe the platform on which the plaintiff fell was reasonably safe and one which could be used, without danger, by a passenger using ordinary care, their verdict should be for the defendant; " on a finding of the facts suggested, the company was not chargeable with negligence.

5. Where, notwithstanding an omission of the defendant to move for a nonsuit, or to ask for binding instructions to the jury, it is clear that the admitted facts fail to establish any negligence in the defendant, and that plaintiff, as matter of law, must always fail to recover, a judgment for the plaintiff will be reversed without a new venire.

| 139 | 149 |
|-----|-----|
| 150 | 616 |
| 139 | 149 |
| 164 | 33 |
| 139 | 149 |
| 178 | 611 |
| 139 | 149 |
| 179 | 193 |
| 179 | 324 |
| 139 | 149 |
| 187 | 117 |
| 187 | 208 |
| 139 | 149 |
| 188 | 503 |
| 139 | 149 |
| f198 | 320 |
| 139 | 149 |
| 203 | 1259 |
| 139 | 149 |
| 24 SC | 1140 |
| 139 | 149 |
| f217 | 1252 |
| f217 | 1515 |
| f217 | 1516 |
| 139 | 149 |
| 39SC | 1596 |

Statement of Facts.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 139 October Term 1890, Sup, Ct.; court below, No. 402 December Term 1888, C. P. No. 1.

On October 23, 1888, William S. Graham and Maria E. Graham, his wife, in right of said wife, brought trespass against the Pennsylvania Company, operating the Pittsburgh, Fort Wayne & Chicago railway, to recover damages for personal injuries received by Mrs. Graham and alleged to have been caused by the negligence of the defendant company. Issue.

At the trial on April 1, 1890, it was shown that the arrangement of the Federal street station, Allegheny city, where Mrs. Graham received her injuries, was as follows:

Along the track upon which Mrs. Graham arrived, were two platforms, together about twenty-three feet wide, the two covered with a shed. Next the track was a platform three feet ten inches wide (as given in the appellant's paper-book, four feet nine inches, as given in that of the appellees), extending the length of the train eastward towards the exit gate. This platform was nine inches below the lowest car step. On the other edge of it from the train, was a descent of nine inches to the main platform, which was about nineteen feet wide extending across to the north main track. The posts of the shed, on one side, were at the inner edge of the narrow platform; on the other, about twelve feet, perhaps, to the south. The shed was lighted by electric lights of 50-candle power, suspended under the comb of the roof.

Mrs. Graham testified that on the evening of February 6, 1888, about 8 o'clock, her train reached the station, when she alighted and with a basket on her arm started east toward the exit; that, after walking about twelve feet, " edging " to the right to get within the line of the posts, she fell and sustained severe injuries; that she had frequently stopped at Federal street station from defendant's trains, but never before had she alighted upon this raised platform; and she could not imagine at first what caused her to fall, as she supposed she had alighted upon the main platform, until she looked about her and observed the descent from the narrow platform to the other, and that was the first she knew of the offset there.

### Charge of Court below.

William Graham, a son of the plaintiffs, called on their behalf:

Q. State whether, in your judgment, from your observation there, your knowledge of the platform, that is a safe platform upon which to alight from trains?

Objected to, as incompetent and irrelevant.

By the court: Objection overruled; exception.[1]

A. I think it is an unsafe platform to arrive on, for the light shines toward you, and the elevation is in front of you, and the light shining against this elevation would make the platform appear one, unless you were looking for it; unless you were warned against it.

M. Jacob, called for the plaintiffs, testified that he was an architect, had had experience in building railroad stations and platforms, was once in the employ of the Fort Wayne railway, and that he had examined the construction of the platform at Federal street station, at the point where Mrs. Graham was injured.

Q. Please state whether, from what you observed there of the construction of this platform, you would regard it as a safe place for passengers to land?

Objected to.

By the court: Objection overruled; exception.[2]

Q. Answer that question, whether or not you would consider that a safe place for the passengers to land? A. In my personal opinion, I would unhesitatingly say that the platform, from the way it is built, is not only not safe, but it is actually a trap, from the very fact that it is raised nine inches above the level of the ground, without any side protection. People walking towards the front are very apt to make the least step sideways and go down. Such platforms when meant to be raised above a common level of the ground, must be—Objected to. Q. Give your reasons for regarding them unsafe; you say a person walking towards the front, the least step sideways would throw them down? A. Yes, sir, off the level on which he stands.

Other witnesses for the plaintiffs were permitted to testify under objection and exception, to the same effect.

At the close of the testimony, the court, STOWE, P. J., charged the jury, in part, as follows:

Charge of Court below.

That brings us to this question that we have before us. Here was an offset. Here was a place that if a person fell over it he might get hurt. This lady did fall over it and was hurt. Now, was she guilty, under the circumstances, coming up at that time of night, without knowledge of this platform there, of a want of ordinary care; or, was she doing that which persons would ordinarily be expected to do, and ordinarily would do, under the same circumstances?

The evidence shows these posts were less than four feet from the car. She, with her basket, could not very well get along on the narrow platform with safety, if the train would move. It would be in danger of dragging her, throwing her down, and the necessary and safe way would be to step off the platform. Therefore, she had a right to go out towards the center of the main platform. She did go there, or intended to go there, and in doing that fell. Now, was she bound to expect, under the circumstances, that there was a place there that would cause her to fall, an offset? If the evidence satisfies you that such would be the ordinary conclusion, observation and experience of people, then she has been guilty of negligence. . . . .

We have been asked to say to you on the part of the plaintiff:

1. If the jury find from the evidence that the plaintiff was a passenger on the defendant's train and arrived at the station of the defendant company in Allegheny, on the night of February 6, 1888, and after alighting from the train, was walking along the platform of the company towards the exit, and while thus walking fell and received the injuries complained of, and such fall was caused by any negligence of the company, in the construction of the platform or the lighting of same, then the verdict should be in favor of plaintiff.

Answer: This point is affirmed, with the qualification that you do not find the plaintiff herself guilty of some concurrent negligence. That is understood.

2. The defendant company, being a common carrier for hire, was bound to use the utmost skill and foresight in the construction of the platform and the lighting of same; and, if the platform upon which plaintiff was injured, was not constructed and lighted in such manner as the most prudent and careful persons are accustomed to use, such want of prudence and care would render the defendant guilty of negligence.

Charge of Court below.

Answer: This point is affirmed. It does not mean, gentlemen, that the very highest and the utmost amount of skill and care should be used, but only that amount of skill that persons are accustomed to use, who exercise the greatest degree of skill that is usual. It does not intend to put the company in the position of insurers, but of simply compelling it to use the utmost degree of skill that is usual under circumstances of a like nature, to guard against injury to passengers.

3. The evidence in this case being uncontradicted, that the platform upon which plaintiff was injured, was composed of two parts, to wit, an upper or higher platform upon which plaintiff alighted when she stepped from the car, this platform being about four feet in width and extending in length towards the exit from the station where it sloped gradually to the lower level, and a lower platform about nine inches below the upper one, it is a question of fact to be determined by the jury, from the testimony in the case and in view of their own experience, whether such a platform is constructed with the proper skill and foresight to prevent accidents to persons alighting from the cars upon the same; and, if the jury should find that the platform is not so constructed, then the defendant is guilty of negligence, and would be liable to the plaintiff for the injuries received by her.

Answer: This is affirmed, subject, of course, to the proposition that the plaintiff was not guilty of concurrent negligence.

The defendant's counsel has asked me to say:

1. The plaintiff's right to recover in this case, if any, depends upon the liability of the defendant to respond in damages for its negligent acts; and the burden is upon the plaintiff to convince the jury, by the fair preponderance of testimony, that the plaintiff's injury was caused by negligence of the defendant.

Answer: This is affirmed. By way of explanation, I may say, that if the jury are satisfied from all the testimony, that this was a dangerous place to be used as an exit for passengers from the car, one that ought not to have been there, that constitutes negligence and will make the defendant liable.

2. The duty of the defendant company is to use ordinary care in the construction of its platforms; and, if the jury believe that the platform on which the plaintiff fell was reasonably safe, and one which could be used, without danger, by a

Charge of Court below.

passenger exercising ordinary care, then their verdict should be for the defendant.

Answer: This point is refused.[3]

3. If the jury believe that the alleged defect in the platform was a patent one, that is, open and visible, and that there was sufficient light for a person using ordinary care to see and avoid the danger, then their verdict should be for the defendant.

Answer: We cannot say, that, because the offset in the platform was open and visible, there being sufficient light to see it by a person exercising ordinary care, the plaintiff cannot recover, without explaining to the jury what constitutes ordinary care under the circumstances of this case. The question here is, did the plaintiff use or exercise ordinary and proper care on the occasion in question? Here you will consider the facts in evidence. She says she did not know of the offset in the platform. The evidence shows such an offset is not usual in platforms used for the debarking of passengers from railway cars, but, on the contrary, indicates that the usual method is to have the platforms level after they were reached. Passengers are not bound to anticipate and look out for irregularities or offsets which might cause one to fall. Under ordinary circumstances, a passenger has a right to expect an ordinary and usually level and safe exit to the depot or station after he has left the cars, and has, therefore, a right to go along the platform exercising only such care as would be reasonable and proper under circumstances he was bound to anticipate. With this explanation the point is affirmed.[4]

4. If the jury believe from the evidence that the platform on which Mrs. Graham fell was a useful device to assist passengers to enter and alight from trains, and that the step down which Mrs. Graham fell was of a common and usual height and properly lighted, their verdict should be for the defendant.

Answer: This, and the point I have refused before, are answered together. This point is refused. It is for the jury to determine, under all the evidence, whether, even if the device was useful, as suggested, it was constructed and arranged in such a manner as was safe and proper, as a means of exit from trains stopping at the station. It might be a very useful device, extremely useful; but the question is not, was it simply useful, but was it safe as arranged in this case.

Arguments.

5. If the jury believe from the evidence that the distance from the lowest step of a car to the ground is about seventeen inches, and that that distance is greater than children or women can with reasonable comfort and safety step, then it is the duty of the defendant to provide some intermediate step for them at stations; and, if the jury believe that the narrow raised platform or step from which Mrs. Graham fell, was placed there for that purpose, and was such a device as could be used by a passenger exercising ordinary care, without injury, then their verdict should be for the defendant.

Answer: This point is refused. We think the proposition is too broad. It means, if I understand it, that if one using ordinary care *could* use the platform without injury, the plaintiff cannot recover. This would seem to say, if affirmed, that because one exercising due care was not hurt, therefore, one who was hurt did not exercise due care, proper care, which we think does not follow, either as a matter of fact, or as a principle of law. I may be exercising due care and may be getting along perfectly well, because I may see the danger, and if I see it I am bound to expect it. If I do not, and fall down, I am not exercising due care, because I know it is there. You do not know it is there, and you fall down, it may be due care. The thing I do would be negligence in me, and yet due care in you.[5]

The jury returned a verdict for the plaintiff for $3,000. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal, assigning for error:

1, 2. The admission of plaintiffs' offers.[1] [2]

3–5. The answers to the defendant's points.[3 to 5]

*Mr. George B. Gordon* (with him *Mr. John H. Hampton* and *Mr. William Scott*), for the appellant:

1. The question at issue was whether the platform provided by the defendant was so constructed that it could be used by passengers, by the exercise of ordinary care on their part, without injury. There was involved in the case no question of any particular technical knowledge, with reference to the platform. It was a plain, ordinary contrivance, of which any juror of

Arguments.

ordinary knowledge was competent to judge, when put in possession of the facts. Having the location, the distance of this offset from the train, the height of the offset, and the width of the platform below, the jury were as competent to pass upon the fact whether it was dangerous or not, as upon a like question connected with a step in a sidewalk or pair of stairs. The offers objected to were therefore inadmissible : Starkie on Ev., Shars. ed., 96, 176 ; 1 Greenl. Ev., § 440, n. 4 ; 1 Phillips, Ev., 778 ; Franklin Ins. Co. v. Gruver, 100 Pa. 273 ; Ramadge v. Ryan, 9 Bing., O. S., 333 ; New Eng. Glass Co. v. Lovell, 7 Cush. 321 ; Landeford v. Ballou, 8 Allen 408 ; Connell v. Insurance Co., 59 Me. 582 ; Garisk v. Railway Co., 49 Mo. 274.

2. While it is the duty of a railroad company to keep its platform and approaches safe and convenient for the ingress and egress of passengers to and from its cars, the rigor of the rule which requires it, out of considerations of public policy, to exercise the highest possible diligence for the benefit of the passenger, while in the actual progress of its journey, and holds it responsible for the slightest defect in its machinery, track and appliances, is reasonably relaxed with respect to its platform and approaches. With respect to these, it is held to that reasonable degree of care for the safety and protection of its patrons, having regard to the nature of its business, as is demanded of individuals upon whose premises others come by invitation or inducement for the transaction of business : Moreland v. Railway Co., 141 Mass. 31 ; Thompson on Carriers, 104. And if the jury found "that the distance from the car step to the platform was greater than women or children could with reasonable comfort and safety step," then, under the doctrine of Delaware etc. R. Co. v. Napheys, 90 Pa. 135, it was the duty of the company to provide the intermediate step, and if it was such as could be safely used with ordinary care, the company was guilty of no negligence in erecting it.

*Mr. R. B. Petty* (with him *Mr. J. O. Petty* and *Mr. K. T. Friend*), for the appellees:

1. The witnesses whose testimony was admitted, under objection, were not called and permitted to testify as experts. They did not testify as experts at all. Before they were permitted to give their judgments, they testified that they were

Arguments.

familiar with the platform from daily use. They knew the manner of its construction, the situation of the offset, and of the row of posts; the location of the lights and the manner in which the light would strike the eyes of persons descending from the car; the location of the exit from the station, and the course passengers would take to reach the exit; and, upon showing their knowledge of all the facts, they were permitted to give their judgments. The question is settled by the ruling in Beatty v. Gilmore, 16 Pa. 463; and Franklin Ins. Co. v. Gruver, 100 Pa. 273, does not establish a different doctrine.

2. Beatty v. Gilmore, has been followed in Amer. Steamship Co. v. Landreth, 102 Pa. 135; Altoona v. Lotz, 114 Pa. 245; Nanticoke Bor. v. Warne, 106 Pa. 374; Minnequa Imp. Co. v. Coon, 10 W. N. 502. And the rulings in other states are not in conflict: Potter v. Pequonnoc Co., 17 Conn. 249; Commonwealth v. Sturtivant, 117 Mass. 122; Lund v. Tyngsborough, 9 Cush. 36; Kellehu v. Keokuk, 60 Ia. 473; Alexander v. Mt. Sterling, 73 Ill. 366; Spear v. Commissioners, 113 Ill. 632; International R. Co. v. Klaus, 64 Tex. 293; Railroad Co. v. Jarrard, 65 Tex. 560; Bridge v. Railroad Co., 25 S. C. 26; Turnpike Co. v. Carrell, 66 Md. 431; Hanna v. Barker, 6 Col. 303.

3. While there seems to be some difference in the cases as to the relative duties of railroad companies and passengers, when the latter are upon trains and when upon platforms and approaches, no case holds a railroad company to a less degree of care than the rule laid down in the present case. The cases all hold that it is the duty of the company to see that the approaches to the station are reasonably safe to the passenger: Patterson's Ry. Acc. Law, §§ 5, 8, 208, 221; Shear. & Redf. on Neg., §§ 63, 507; McDonald v. Railroad Co., 26 Ia. 154; Chicago etc. R. Co. v. Wilson, 63 Ill. 167. In Pennsylvania, no distinction has been made as to the degree of care required: Penna. R. Co. v. Zebe, 37 Pa. 420; Gillis v. Railroad Co., 59 Pa. 129, 132. The only distinction ever drawn in this state is as to the burden of proof: Hayman v. Railroad Co., 118 Pa. 508. And the court could not say, in answer to the defendant's fifth point, that because others who exercised due care were not injured, therefore Mrs. Graham could not recover: Longman v. Railroad Co., 19 C. B., N. S., 183; Dickson v. Hollister, 123 Pa. 421; Phil. etc. R. Co. v. Hagan, 47 Pa. 244.

OPINION, MR. JUSTICE MITCHELL:

That the opinions of witnesses are in some cases admissible as evidence, even when not coming properly under the head of expert testimony, has long been established in practice. In several classes of questions, the line between the witness's judgment or opinion and his affirmation of a fact is so indistinct that it cannot be marked out in practice. Such are questions of identity of persons or things, of the lapse of time, of comparative shape or color or sound, of expression and through it of meaning, etc. In all of these, however positively the witness may affirm facts, what he says is after all largely his opinion, but so blended with knowledge and recollection that the line where opinion ends and fact begins cannot be distinguished. Hence, both must be admitted or both excluded, and to do the latter is often to shut out the only light the case admits of. In questions, therefore, of identity, of sanity, of handwriting, and some others of like nature, opinions of witnesses, having sufficient knowledge of the particular circumstances to form the basis of a responsible judgment, have been admitted without hesitation. Such is the elementary doctrine laid down in Greenleaf and other authoritative works, but the theory on which such evidence is admitted is very slightly developed. The cases, however, have extended far beyond the classes mentioned in the text books, and may be said not only to have become legion, but legion against legion. An examination of a large number of them, while not enabling us to reconcile all the practical applications, does, we think, show that the ground on which such evidence must always rest, as expert testimony strictly so called does, is a clear necessity.

One of the earliest and strongest cases, since constantly cited in favor of the admission of such testimony, is Porter v. Pequonnoc Co., 17 Conn. 249 (1845), where the opinions of observers, not professional engineers or builders, were allowed to be given, as to the sufficiency of a dam to stand the pressure of a flood which it was contended ought to have been anticipated. The case is decided without any abstract discussion, but the germ, at least, of the principle ·may be found in the following language of STORRS, J.: " It is impossible for a person, however skilful or scientific, to give an intelligent or precise opinion on facts testified to by another witness in the

manner in which they are frequently related. Such witness may detail in the best manner he can the facts on the subject of which the opinion of a scientific person is sought, but it may be impossible to extract from his testimony the data for such an opinion with sufficient precision and certainty."

In the following year (1846), the Supreme Court of Vermont, in Clifford v. Richardson, 18 Vt. 620, put the principle still more clearly, thus : " When all the pertinent facts can be sufficiently detailed and described, and when the triers are supposed to be able to form correct conclusions without the aid of opinion or judgment from others, no exception to the rule is allowed. But . . . . . the facts are sometimes incapable of being presented with their proper force and significancy to any but the observer himself. . . . . Under these circumstances, the opinions of witnesses must of necessity be received." This states very clearly and forcibly the principle and the limits of its application. In those matters where mere descriptive language is inadequate to convey to the jury the precise facts or their bearing on the issue, the description by the witness must of necessity be allowed to be supplemented by his opinion, in order to put the jury in position to make the final decision of the fact. It is thus expressed in Commonwealth v. Sturtivant, 117 Mass. 122, where a large number of illustrations are given, some of which, I may say, in passing, seem to us extremely questionable : " The exception . . . . . includes the evidence of common observers testifying to the results of their observation, made at the time, in regard to common appearances or facts, and a condition of things which cannot be reproduced and made palpable to a jury."

But, as necessity is the ground of admissibility, the moment the necessity ceases the exception to the general rule that requires of a witness facts and not opinions ceases also. Hence, whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible. This is well stated by Chief Justice SHAW, in New Eng. Glass Co. v. Lovell, 7 Cush. 321 : " The principle upon which this evidence is admissible is clear and entirely just. In applying evidence which does not go directly to the fact in issue,

but to facts from which the fact in issue is to be inferred, the jury have two duties to perform: first, . . . . . to ascertain the truth of the fact to which the evidence goes, and thence to infer the truth of the fact in issue. This inference depends on experience. . . . . Now, when this experience is of such a nature that it may be presumed to be within the common experience of all men of common education, moving in the ordinary walks of life, there is no room for the evidence of opinion; it is for the jury to draw the inference." The law is thus summed up in the Am. & Eng. Encyc. of Law, tit., Expert and Opinion Evidence, VI.: " Opinions are never received if all the facts can be ascertained and made intelligible to the jury, or if it is such as men in general are capable of comprehending and understanding. The ordinary affairs of life cannot be the subject of expert testimony." See volume 7, p. 493, and cases there cited.

This examination of elementary principles and general authorities has seemed necessary, because our own cases on the exact point are few, and supposed not to be in entire harmony. Passing by the cases where opinions not of experts have been received, practically without challenge, upon questions of sanity, identity, etc., the first case on the subject is Beatty v. Gilmore, 16 Pa. 463. Defendant was building a house on Market street, Harrisburg, and had left an area-way from the street into the basement without a guard or railing, and the plaintiff fell into it. Witnesses were allowed to state their opinion that it was dangerous. This was held to be proper, and the case has been accordingly cited as in favor of the general admissibility of such evidence; and BELL, J., does say that it is " a species of testimony always resorted to in cases like the present." But it appears from the report that there was a porch projecting beyond the area, and that, to fall, a person would have to turn aside from the direct way. It is not, therefore, clear that the mere description of the place would convey to the jury an adequate idea of it with reference to the danger, and this seems to have been in the mind of the court, from the language of the opinion, that testimony as to the dangerous character of the excavation " was, in truth, rather the assertion of a fact dependent in some measure upon opinion, than of an abstract opinion without more." That this was the ratio deci-

dendi also appears probable from the cases cited in the opinion, which are clearly cases where the circumstances were incapable of adequate description. So understood, Beatty v. Gilmore is entirely in the line of the best authorities heretofore cited. If not to be so understood, then it must be considered as materially modified by the cases hereafter to be noticed.

The next case, Minnequa Imp. Co. v. Coon, 10 W. N. 502, was clearly in the same line. The opinions of witnesses as to the violence and unusual character of the storm were certainly necessary to supplement their descriptions; and, as to anything beyond that, this court said that if the witness "had any claims to the character of an expert," the court below would not be reversed on a matter so much within its discretion. The only other case is Franklin Ins. Co. v. Gruver, 100 Pa. 266, in which it was held that an insurance expert could not be permitted to give his opinion that the erection of a frame building next to the building insured increased the risk in fact. The basis of decision was indicated in the opinion of GORDON, J.: "How any person can be said to be an expert in that which must necessarily result from observation so general that it must be common to every person, we cannot understand." In the same general line are Amer. Steamship Co. v. Landreth, 102 Pa. 135, and Lombard Ry. Co. v. Christian, 124 Pa. 125, though in both of these the admissibility of the testimony was discussed rather as declarations of agents than as opinions necessary for the information of the jury. From this view it appears that our own cases are not really in conflict with each other, and that certainly the latest and most authoritative of them are in harmony with the best elementary doctrine. Some occasional difference in application may be unavoidable, because, as said by Chief Justice SHAW in New Eng. Glass Co. v. Lovell, supra, there is extreme difficulty in laying down any rule precise enough for practical application, and the only proper course is to keep the principle steadily in view, and apply it according to the circumstances of each case.

In the present case, the alleged dangerous place was a raised part of the platform, or broad step, four feet wide and nine inches high. It came clearly within the range of ordinary experience. The briefest statement would convey a perfect comprehension of the place, and every juryman who ever got in or

Opinion of the Court.

out of a car, or went up or down a flight of steps, was as capable of judging of the alleged danger as the witnesses who gave their opinions. The first and second assignments of error must be sustained.

The third, fourth, and fifth assignments must also be sustained. There is no situation in which ordinary care is not required of a plaintiff, and want of it a bar to recovery: Del. etc. R. Co. v. Cadow, 120 Pa. 559. It is unnecessary to discuss, now, whether the railroad company was bound, in its platforms and approaches, to use the very utmost degree of care, as it is to passengers during actual carriage. If the result in fact was a platform which could be used without danger by a passenger exercising ordinary care, then the company had done its duty, so far as this plaintiff was concerned; and, as its points were based on the finding of this fact by the jury, they should have been affirmed: Del. etc. R. Co. v. Napheys, 90 Pa. 135.

In the Napheys case, the absence of a step or elevation in the platform was the only negligence alleged, and on it the jury found a verdict for the plaintiff. In the present case, the presence of such an elevation seems to have been sufficient for the jury to find negligence and a verdict for the plaintiff. Defendant's counsel, for reasons which are not apparent to us, omitted to ask for a nonsuit or a peremptory direction in their favor. Notwithstanding this omission, however, it is clear that the admitted facts fail to establish any negligence of defendant, and that the plaintiff must, as a matter of law, always fail to recover. It would therefore be useless to send the case back for another trial.

Judgment reversed.