Wuerfel *v.* Metropolitan Life Insurance Company, Appellant.

Argued October 1, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, PATTERSON and PARKER, JJ.

*D. C. Jennings,* with him *Wallace E. Edgecombe,* for appellant.

*Clair D. Moss,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 24, 1941:
This is an appeal from the refusal of the court below to enter judgment n. o. v. for defendant after a verdict in

favor of the plaintiff in an action of assumpsit for $4127.26 or to grant a new trial. The plaintiff (born July 20, 1878) set forth in his statement that he was one of a group of employees of the Allegheny Steel Company who were insured under a group policy by the defendant company by the terms of which the plaintiff agreed to pay a monthly premium of $1.94 and that the company defendant agreed to insure the plaintiff against total and permanent disability in the sum of $4000. The plaintiff received a certificate from the defendant company in which one of the provisions reads as follows: "Any employee insured under this plan who shall become wholly and permanently disabled while in our employ before reaching the age of sixty, either by accidental injury or disease, and is thereby permanently, continuously and wholly prevented from pursuing any and all gainful occupation, will be regarded as a claimant by the Metropolitan Life Insurance Company. Six months after the receipt of due proof of such disablement, the Insurance Company will begin making payments of the amount of insurance under any of the plans for instalment settlement set forth in the Policy as may be selected by the employee."

On April 12, 1929, the plaintiff was injured in an accident while in the course of his employment and thereafter he continued in the employ of the company until October 21, 1932, when he was discharged because of his inability to work. At the time of his injury and at the time of the alleged total disability the plaintiff had not yet reached sixty years of age. The policy was paid up in full force at the time of total disability and the plaintiff claims that he made due proof of his accidental injury to the company. The payment of the claim was contested.

In the affidavit of defense and new matter it is stated that the plaintiff is not totally and permanently disabled and that the plaintiff did not give the defendant due proof of total and permanent disability.

At the trial plaintiff showed that he was injured by both arms being caught between a belt and a table as a result of which his arms were crushed and he suffered a dislocation of the inner end of the right clavicle. He was treated in the Allegheny Valley Hospital for thirty days and he then remained at home for six weeks. He testified that he went to work when his arm was "still bleeding." When he resumed work his employer assigned him the same job he had before, that is, the job of foreman. Plaintiff testified: "I didn't have to do nothing. The men had to do the work. I just tell them what to do. I couldn't do no work." He worked there three years and then was transferred to the belt room. He was asked: "Did you do any physical work in the belt room?" He answered: "I done what I could. I sweep up as much as I could. I tried to do the best I could." He said: "I could not do very good." He worked there about a year and then was put on as a watchman. He worked twenty months on that job. He said that when he was a watchman "they want to make me work on the track with a great big coal shovel and clean that iron that falls off the trucks. I have to clean it up, and I told them I cannot do it, and then they fired me." This was on October 21, 1932. Upon being asked: "When you left the employ of the Allegheny Steel Company where did you go to work from there?" he answered: "I worked no place for four years. On my condition I could not get no job." In 1936 he secured a job as bartender where he "made sandwiches and dished out whiskey and beer." He said: "Even by tending bar I get my hands wet and I get cramps in there. I cannot work." He said he had to give this job up because he could not do the job right. He then went to work for a Mrs. Lardin, "tapping beer", that is, running it out of the spigots. He worked there from June to December of 1937. He was laid off. On May 7, 1940, he got a job on WPA, carrying water. He testified that he was not able to carry a full bucket of water but by having a strap over his shoulder he could carry a bucket contain-

ing about two gallons of water. Later while still on WPA
he was put to work in a stone quarry. His work there
was to watch the tools, keep track of all stones to be
hauled out with trucks and where they go to and what
was their tonnage. He worked seven and a half hours a
day on the average of four days a week and earned each
month $52.80. He testified that he could not do any work
which involved lifting and that the job he had on the
WPA involved no physical work of any kind. The man
who was the supervisor of the Allegheny Steel Company
in April 1929 testified that prior to April 12 of that year
the plaintiff possessed very good ability to do his work
and was promoted from grinding to shop foreman. He
was asked: "What would you say as to his ability to per-
form that work so far as physical strength was con-
cerned?" He answered: "Well, he needed physical
strength." He added that plaintiff was able to perform
his duties from a physical standpoint. He said when
plaintiff returned to work several months after the in-
juries which he received on April 12, 1929, he did no
physical work although he retained the job of foreman.
He was asked: "Was it necessary generally for the fore-
man to do physical work in order to hold down that type
of job?" He answered: "Yes." He was asked: "How
long did he continue in the capacity or title of foreman?"
He answered: "Five or six months" and "he could not
perform—he could not do what we wanted him to do. He
has got to handle sheets and assist the men on the ma-
chines." He was asked: "What physical work did you
ever see Mr. Wuerfel do after he returned following his
accident?" He answered: "He tried to use a broom with-
out success." He also tried to do other work but without
success. The witness said he "tried to create a job for
him. He was in no capacity—he was not physically fit,
according to my observation, to do anything, and I tried
to create a job for him in that department and I figured
I would put him in the belt room, but from what I could
observe he could not even do that work." He said: "My

instructions to him were to take it easy. I figured the man was not in condition to do anything."

The general foreman on the WPA testified that after the plaintiff was in WPA service for a period of time he could not perform his duties. He then gave him a job as a tool man, "a job for some one who cannot do manual labor." He said what the defendant was doing was "not really a job."

The man who employed Wuerfel as a bartender testified that Wuerfel was unable to perform those duties. He said: "I helped along as much as I could. He had a little following, and I tried to hold on to him as long as I could, but I just got tired of it. I told him he better look out for something else." He "helped him because he took pity on him." Another tavern keeper also testified that she had to "let Wuerful go" because "he could not do his work". Two qualified medical witnesses testified that Wuerful had lost about seventy-five per cent of the use of his right arm for industrial purposes and that "he is permanently disabled except for a carefully selected type of work in which he did not have to do anything with his hands" and that "there will be no change in his condition". The plant physician for the Steel Company and another physician declared that Wuerfel was not totally and permanently disabled, though the former stated that Wuerfel had "lost about two thirds of the biceps muscle and had sustained the dislocation of the inner end of the right clavicle."

The issue was whether or not Wuerfel was permanently disabled on or before October 21, 1932, on which date he was still an employee of the Steel Company. Viewing the testimony in behalf of plaintiff in the light most favorable to him, and giving him the benefit of every reasonable inference from the evidence, as courts must do on a motion for judgment for the defendant n. o. v., binding instructions in favor of the defendant would not have been warranted. There was a clear-cut issue of fact and this was submitted to the jury under

proper instructions, inter alia, as follows: "Total disability means the inability to perform any duty of any occupation which the plaintiff might be ordinarily capable of performing. Total disability does not mean that the plaintiff must be helpless, mentally and physically." This instruction was in accord with the decisions of this court. In *Cooper v. Metropolitan Life Ins. Co.,* 317 Pa. 405, 408, 177 A. 43, this court said: "While the words of the policy must receive reasonable construction and, literally interpreted, the words total disability to engage 'in any and every occupation of employment for wage or profit' would require that an insured be a helpless invalid before he would be entitled to benefits under the policy, this cannot be what the parties intended. It is rare that any man is incapacitated from doing some work; many a blind man weaves baskets; a man with both legs and one arm off can sit in a doorway and sell lead pencils, or act as a telegraph operator; but it cannot well be argued that either is not totally disabled. A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing." In *Pearlman v. Metropolitan Life Ins. Co.,* 336 Pa. 444, 448, this court, interpreting a similar provision of a life insurance policy, said: a claimant under such a policy is not "barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals, but it does mean that it is not enough for the insured to show that he is unable to do a substantial part of his ordinary work." In the same case this court said (p. 450): "A wholly different problem is presented when the question concerns the *proof* of the permanency of a disability. . . . if the insured had to establish the fact of permanency of disability to a degree of absolute certainty, no benefits would be recoverable until his death

had furnished the only indubitable proof. . . . the courts have uniformly held that it is necessary for the insured to prove only that he is suffering from a disability which is reasonably likely to endure for the remainder of his life; this he may do, for example, by the testimony of physicians expressing professional opinions to that effect." See *Sebastianelli v. Prudential Insurance Company*, 337 Pa. 466. In *Lumbra v. United States*, 299 U. S. 551, 559, the Supreme Court of the United States said: " 'Total disability' does not mean helplessness or complete disability, but it includes more than that which is partial. 'Permanent disability' means that which is continuing as opposed to what is temporary. . . . The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. . . . occasional work for short periods by one generally disabled by impairment of mind or body does not as a matter of law negative total permanent disability."

In the instant case the jury was warranted in finding under the evidence that the plaintiff while in the employ of the Allegheny Steel Company became "wholly and permanently disabled before reaching the age of sixty" and was so prevented "from pursuing any and all gainful occupation" as justly to be entitled to the status of a claimant under the above referred to insurance policy of the defendant company.

Defendant's second reason for judgment n. o. v. is that the plaintiff did not furnish "due proof" of total and permanent disability. On February 13, 1934, the defendant company received a letter from Clair D. Moss, an attorney, stating that he "represented Ernest Wuerfel who was employed as a working foreman for the Allegheny Steel Company, Brackenridge, Penna., until October 21st, 1933. On April 19, 1929, Mr. Wuerfel was injured when he was crushed between a table and some steel rolls, resulting in permanent total disability. . . .

I would appreciate an interview with one of your representatives relative to payment of the above policy issued under group policy No. 1602 G to the above party." On February 20, 1934, the defendant company by E. J. Spellman, Supervisor Permanent Disability, answered the receipt of this February 13th letter. The letter stated, inter alia, "Your client's insurance is no longer in force. However, if you contend your client actually became both totally and permanently disabled while he was covered under the policy, we will give the matter further consideration." Certain blanks were enclosed to be filled out by Wuerfel and attending physicians.

The court below in refusing to enter judgment n. o. v. stated in respect to this correspondence: "In our opinion this was a sufficient compliance with the terms of the policy, particularly when it contained no definition of what was meant by due proof, and no further provisions requiring plaintiff to furnish any specific kind of notice or information." This statement is in accordance with the law. "Satisfactory proofs, within the meaning of a policy, are such as the law deems reasonable and satisfactory, and whether they are 'satisfactory' is not for the exclusive determination of the insurer. The sufficiency of proofs is for the court to determine, and the question need not be submitted to the jury. Substantial compliance with a condition in the policy relating to the production of preliminary evidence of loss must be made by the claimant before a right of action will accrue to him for losses, unless the right to insist on such preliminary condition is waived. But such conditions are liberally expounded and held to require only the best evidence of the fact which the party possesses at the time, and the claimant is not bound to comply with the condition with technical strictness, either as to time or manner of compliance": 14 Ruling Case Law, section 507, p. 1337. In *Astrin v. Metropolitan Life Insurance Company,* 341 Pa. 120, 17 A. (2) 887, this court, in an opinion by Mr. Justice LINN, said: "The term 'due proof' in the

policy did not require, as a condition precedent to recovery, a showing such as would be necessary to make out a prima facie case at the trial." See also *Hanrahan v. John Hancock Mutual Life Insurance Company*, 143 Pa. Superior Ct. 557, 18 A. (2) 512.

The motion for a new trial was based on the claim that the verdict was contrary to the evidence and against the weight of the evidence and on the court's holding that the letter of February 13, 1934 (supra), constituted due proof of total and permanent disability within the terms of the policy. The evidence presented a case for the jury and the verdict is well supported in fact. The question of "due proof" we have already discussed.

The judgment is affirmed.