## Cobb *v.* Mutual Life Insurance Company of New York, Appellant.

Argued October 28, 1942.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, RHODES, HIRT and KEN-
WORTHEY, JJ.

*William F. Illig,* with him *Gunnison, Fish, Gifford
& Chapin, Louis W. Dawson, John Walter Wells, Wal-
ter P. Wells* and *Mortimer E. Graham,* for appellant.

*G. Mason Owlett,* of *Owlett & Webb,* with him *W. F.
Dubois,* for appellee.

OPINION BY RHODES, J., March 2, 1943:

Defendant has appealed from judgment in favor of
plaintiff in the amount of $2,903.96,[1] its motions for
judgment n. o. v. and a new trial having been over-
ruled.

This action in assumpsit was brought by plaintiff to

---

[1] Stipulation filed in court below whereby it was agreed that
the case be heard and decided by the Superior Court. See Act
of June 24, 1895, P. L. 212, § 7 (e), 17 PS § 189.

recover total and permanent disability benefits alleged to be due under two insurance policies issued by defendant, and for refund of premiums paid. The policies contain substantially the same clauses as to total and permanent disability benefits; they are printed in the margin.[2]

[2] The following provisions appear in policies Nos. 2,633,691; 3,729,590:

"Total Disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the [said] Insured to follow a gainful occupation."

"General Provisions.—The Company may, before making any [disability] income payment or waiving any premium, require due proof of the continuance of total and permanent disability, but such proof shall not be required oftener than once a year after such disability has continued for two years. If such proof is not furnished on demand or if it shall appear to the Company that the [said] Insured is no longer totally and permanently disabled, no further [disability] income payments will be made or premiums waived."

The following provision appears in No. 3,729,590:

"When Benefits become Effective.— If, before attaining the age of sixty years and while no premium on this Policy is in default, the Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining lifetime of the Insured so long as such disability continues."

The following provisions appear in No. 2,633,691:

"When Benefits become Effective: If, before attaining the age of sixty years and while no premium under said Policy or under this provision for Disability Benefits is in default, and, ...... said Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining lifetime of said Insured so long as such disability continues."

"Benefits in the Event of Total and Permanent Disability Before Age 60.

"When Such Benefits Take Effect.— If the Insured after payment of premiums for at least one full year, provided all past due premiums have been duly paid, shall before attaining the age of sixty years at nearest birthday and while this Policy is in full force furnish due proof to the Company at its Home Office

Plaintiff, who was 53 years of age in 1940, was in an automobile accident on March 29, 1934. His left arm was badly injured, and its use largely destroyed. Defendant paid benefits under the policies for total and permanent disability until April 29, 1939, when they were discontinued on the ground that plaintiff was no longer totally disabled.

The evidence produced at the trial, when considered in the light most favorable to plaintiff and all reasonable inferences to be drawn therefrom made in his favor, may be thus summarized:

Plaintiff was at least partially disabled. The use of his left arm was limited; a duodenal ulcer (a chronic indurated callus ulcer) at times caused distress; and hypertrophic arthritis of the spine (second and third vertebrae) sometimes gave him pain, and may have had a restrictive effect.

Prior to his injury on March 29, 1934, plaintiff owned and operated a 270-acre farm. He had thereon ten horses, mostly race horses, and a herd of sixty-five cows. The farm was actually operated by a superintendent and two or three hired men, with additional help when it was needed. Cattle were bought and sold, as well as raised. Plaintiff himself bought and sold cattle for his own account and for others. He trained and raced some of his horses. It does not appear that he performed any other manual labor on his farm prior to his accident. Plaintiff's superintendent had authority to buy for and sell from the herd.

Since 1925 plaintiff had lived in Genesee, Pa., six miles from his Spring Mills farm. For many years

that he has been totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, or from following any gainful occupation, and that such disability has then existed continuously for not less than sixty days, the Company will grant the following benefits."

he had been a director in a bank at Genesee, and he attended the meetings of the board notwithstanding his disability.

At the time of trial, December 9, 1940, plaintiff had on his farm fifty cows and twelve horses (colts, brood mares, stallion, and trained racing horses). (His brother owned one and had an interest in another.) He had the same superintendent, two men employed by the year, and two others to help operate the farm.

As a result of his condition, plaintiff has been unable to perform some of the physical work involved in the buying of cattle, and he has been unable to drive his horses in races. But he has entered and withdrawn them, and collected their winnings when they were successful. During 1939 and 1940 he attended fifty to seventy-five per cent of the many races in which his horses were entered. These races were at widely separated points in Ohio, New York, and Pennsylvania. He went to these races by automobile, and at times drove his own car. He also attended a horse sale in Harrisburg in 1940. He was not disabled mentally, and he was not confined to his home. In fact, he has carried on his farm and the various activities connected therewith without interruption, and has attended the meetings of his bank board. It is not essential that he should do, or be able to do, everything necessary to be done in the conduct of this enterprise. *Butler v. Metropolitan Life Ins. Co.,* 122 Pa. Superior Ct. 159, 161, 186 A. 395. But his own testimony discloses that he did, and had the ability to, perform a substantial and essential part of the duties incident thereto, even though he could not do manual labor. See *Cantor v. Metropolitan Life Ins. Co.,* 108 Pa. Superior Ct. 1, 164 A. 145.

The burden was on plaintiff to prove that he was totally and permanently disabled under the provisions of the policies. *Catalano v. Prudential Insurance Co.*

*of America,* 150 Pa. Superior Ct. 331, 28 A. 2d 349. For this purpose the proofs were inadequate. Total disability includes more than that which is partial (*Wuerfel v. Metropolitan Life Ins. Co.,* 343 Pa. 291, 297, 22 A. 2d 747), and total disability for temporary periods is likewise insufficient to sustain an action under such policies (*Gryszkiewicz v. Prudential Insurance Co. of America,* 150 Pa. Superior Ct. 587, 29 A. 2d 210).

It is argued in behalf of plaintiff that he is unable to perform any one of his duties continuously, and that he cannot engage in any occupation that requires the use of judgment or supervision all of the time. Assuming this to be true, it would not constitute total and permanent disability. For total disability to be permanent it must be continuous. *Gryszkiewicz v. Prudential Insurance Co. of America,* supra. It is true that if the only work one can perform consists of "a few trivial and desultory acts or light work of a limited character and at irregular intervals" he is not barred from recovery (*Pearlman v. Metropolitan Life Ins. Co.,* 336 Pa. 444, 448, 9 A. 2d 432, 434), but it does not follow, merely because there are intervals when a person cannot work, that he is totally disabled.

Plaintiff called four medical witnesses who testified to his condition, his ailments and their permanency. Each of these experts testified that plaintiff was not able to perform any of the duties of any occupation which he was ordinarily capable of performing. This opinion evidence is contrary to the facts admitted by plaintiff himself, and consequently has no probative value to establish plaintiff's case. Proof of permanency of a disability is another matter, and may be established by the testimony of the physicians expressing professional opinion to that effect. *Pearlman v. Metropolitan Life Ins. Co.,* supra, p. 451. One medical witness conceded that plaintiff could supervise; another acknowledged that plaintiff was not disabled mentally, that he

was able to use his judgment, and that he did not know what plaintiff was doing; the third stated that he was aware that plaintiff was not confined to his home, and that he went about, and that at times plaintiff could supervise the racing of his horses and perform the duties of a gainful occupation, but that in his opinion plaintiff could not carry on a continuous occupation or carry on continually any of its duties; the fourth testified that plaintiff could use his judgment in training, racing, buying, and selling horses.

Finally, plaintiff contends that conducting a racing stable is not a gainful occupation, and that no one could ever be sure of a livelihood from it. But plaintiff was engaged in operating a farm. Breeding and racing horses were part of that enterprise; so was raising cattle and selling dairy products. Whether plaintiff made a profit from his horses is immaterial, although his income from this source was admittedly substantial. It has never been required that an occupation or business to be gainful must disclose a profit. We think plaintiff was engaged in a gainful occupation or business, and that his disability was not shown to be total or so disabling as to prevent him from carrying on his business affairs, and supervising his workmen and assistants in the conduct of the various branches of his enterprise.

To a large extent, this case is analogous to and controlled by *Catalano v. Prudential Insurance Co. of America,* supra. We there held that the insured's inability to do manual labor did not establish total disability where he had operated and carried on for profit his coal mines, timber business, and beer distributing business, and there was no medical testimony that he could not do work of a managing and supervisory nature.

In *Butler v. Metropolitan Life Ins. Co.,* supra, we held that plaintiff who had an aneurism of the aorta and was unable to do any labor which required physical exertion was not totally disabled under the terms of

the policy, as he had set up and was carrying on a retail coal and trucking business, which he managed, and, with the help of a workman or assistant who did the manual labor of delivering the coal, conducted for profit, although in the beginning plaintiff had driven his own coal truck but found that he was unable to continue to do so.

In contrast to the present case and the foregoing cases is *Feigenbaum v. Prudential Insurance Co. of America,* 144 Pa. Superior Ct. 412, 19 A. 2d 542.

The third assignment of error is sustained.

Judgment is reversed, and is here entered for defendant.

DISSENTING OPINION BY KENWORTHEY, J.:

I would affirm the judgment.

The rules of construction are well settled. Policies of the sort here involved must receive a reasonable, not a literal construction. *Cooper v. Metropolitan Life Ins. Co.,* 317 Pa. 405, 408, 177 A. 43. The insured is not "barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals." *Pearlman v. Metropolitan Life Ins. Co.,* 336 Pa. 444, 448, 9 A. (2d) 432; "Occasional work for short periods by one generally disabled by impairment of mind or body does not as a matter of law negative total permanent disability." *Lumbra v. United States* 290 U. S. 551, 559, 78 L. Ed. 492, cited with approval in *Wuerfel v. Metropolitan Life Ins. Co.,* 343 Pa. 291, 297, 22 A. (2d) 747.

If the verdict had been for the defendant I would have no quarrel with it. If I had been a juror I should have had much difficulty with the main issue of fact. But I think the case was for the jury. Our province is to set aside the verdict of a jury only "when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing prin-

ciples of law ...... could determine in (plaintiff's) favor the controlling issue involved." *Virgilio v. Walker*, 254 Pa. 241, 98 A. 815.

I think the jury could have found from the evidence that whereas plaintiff was formerly in good health and actively engaged in the management of a farm and racing stable he is now, and has been during the period involved in this suit, an invalid who is compelled to delegate to others all the activities of his occupation except such of them as do not, under the aforementioned rules of construction, defeat his right to recover; that he is transformed, by his disabilities, from active manager to a mere owner of two going concerns. The jury, by its verdict, has so found. I am unable to bring myself to the conclusion the finding is unreasonable.

The evidence must be viewed in the light most favorable to plaintiff. He has virtually lost the use of his left arm; the elbow joint was destroyed, he testified he had "only a small percentage of motion in the elbow," that "the arm is half numb from the joint down," that "the numbness is the terrible part," and that it is continuous; he suffers pain in the elbow seventy-five per cent of the time; the inference is that because of excruciating pain he is unable to move the elbow, he testified "I moved it once and had to have it in a sling six weeks." In 1935 he developed hypertrophic arthritis of the back resulting in limited and painful motion; he testified "my back has been lame and given me a lot of pain since the accident," and that "if I bend over or try to do any work to speak of it makes the pain a lot worse and the lameness a lot worse"; he and his attending physician testified the condition is growing progressively worse. And in the latter part of 1936 or the early part of 1937 he developed "a lot of pain in (his) stomach" which still persists and which he testified interferes with his "being able to do anything"; the condition has been diagnosed as a duodenal ulcer.

It scarcely seems necessary to detail the things this

plaintiff's ailments prevent him from doing; any man who is burdened with the pathologies just described is an invalid. As the majority opinion points out, four medical experts "testified that plaintiff was not able to perform any of the duties of any occupation which he was ordinarily capable of performing." One of them, when asked whether plaintiff was able to perform any of the duties of managing his racing stable, said: "Not if he was my patient." The attending physician had advised *complete rest*. And, in this connection, what was said in *Lumbra v. United States*, supra, and quoted with approval in *Wuerfel v. Metropolitan Life Ins. Co.*, supra, is pertinent: "The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life."

The evidence which, in the opinion of the majority, discloses, as a matter of law, that plaintiff "had the ability to perform a substantial and essential part of the duties incident" to a gainful occupation is that: (1) he entered and withdrew horses from races and collected their winnings; (2) he attended a number of races by automobile; (3) at times he drove his car; (4) he attended a horse sale in Harrisburg in 1940, and, (5) he attended the monthly meetings of the board of directors of a bank.

As to the handling of entries of horses in races plaintiff testified: "Q. You been in the discussions concerning the entry of them? A. Yes. My son done the most of it in the last two years since I got hurt, since he got old enough to do it. I think he entered them all this year. (1940) I entered some last year, but gradually turned it over to him." The entries were made by mail and the winnings paid by check.

Plaintiff was asked whether, when he attended races, he supervised the horses. He said: "I didn't supervise hardly anything. I went in the grandstand and watched my horses try to win."

Although he admitted he drove his car "at times," there was no indication how often or to what extent and it is a fair inference he was unable to drive any great distance because he said he did not drive to any of the races he attended.

There are rare individuals who conceivably could follow a gainful occupation though bed-ridden and in constant pain. But I am fearful that the decision of the majority makes it virtually impossible for the proprietor of an enterprise, as distinguished from an employee, to get total disability benefits under policies of the kind here involved without selling or giving away or losing to his creditors the enterprise. That this plaintiff could not follow any gainful occupation if he were compelled to work for someone else seems apparent, yet, I concede, that is not a conclusive test. But the policies are intended to furnish security against loss of earning power, not income. And I think much too much emphasis has been placed on the fact that the farm and racing stable continued, after plaintiff's disability, to operate on about the same scale as before. The question is not whether they operated but whether plaintiff has been and is able to make any useful contribution to their operation. I think that is what is meant by performing "any work for compensation, gain or profit" or following "any gainful occupation." The jury apparently believed the complete operation had been, since plaintiff's disability, transferred to others and that his desultory activities were inconsequential. I am not so sure they were not that I can declare it as a matter of law.

The motion for a new trial is based on the refusal of appellant's sixth point for charge. In my opinion its form assumed a literal interpretation of the policies and was therefore too narrow. The law was correctly stated in the charge. I would therefore also overrule the motion for new trial.

BALDRIGE, J., joins in this dissent.