First National Bank of McKeesport, Appellant, *v.* Metropolitan Life Insurance Company.

Argued April 19, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Samuel J. Goldstein,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY BALDRIGE, P. J., July 19, 1945:

This action in assumpsit was brought by Ursula Nauyok, widow of Anthony Nauyok, to recover the amount alleged to be due under a group life insurance policy containing a total and permanent disability provision. The case was submitted to the jury. Following a verdict for the plaintiff the court below granted a motion for judgment n.o.v. for defendant. Ursula Nauyok died subsequent to the trial and the First National Bank of McKeesport, her administrator, was substituted as plaintiff herein.

The policy was issued by the Metropolitan Life Insurance Company to the Jones and Laughlin Steel Corporation, insuring employes who would qualify under its terms. The main features of plaintiff's testimony (none was offered by the defendant) may be summarized as follows. Anthony Nauyok entered the employ

of the Jones and Laughlin Steel Corporation in 1922 and became insured under the group policy on August 30, 1928, in the sum of $1,000, which a year later was increased to $2,000. On December 8, 1938, he attained the age of 60 years. He continued working until January 23, 1939, when he was laid off. Ten days later the company issued to him a formal notice terminating his employment, due to a "reduction in the force," and a check mark, which appeared therein under the title of "Character of Service," indicated that his work was "Below Average." There was still a lower grade, however, viz, "Unsatisfactory." Nauyok's insurance policy was cancelled February 22, 1939, but no notice of such action was given him. He paid no premiums on the policy after that date, and no claim for disability benefits was made until July 7, 1942, almost three and a half years after the termination of employment. Nauyok brought a suit in October 1942, but filed no statement of claim and later it was discontinued. He died on November 23, 1942, and this present action was brought on May 25, 1943.

The policy provides that if the employee prior to his 60th birthday becomes totally and permanently disabled the insurance company will pay him, in lieu of the payment of life insurance at his death, monthly instalments of a total amount equivalent to the amount of life insurance. Section 14 of the group policy, under the heading "Notice and Proof of Claims for Disability Benefits" reads as follows: "(a) Immediate written notice of sickness of, or injury to, any Employee insured hereunder, must be given to the Company by such Employee," and a similar provision is in the certificate issued to the insured.

It was incumbent upon the plaintiff under the terms of the policy to show, before a recovery could be had, either that the insured was totally and permanently disabled prior to December 8, 1938, or that his death oc-

curred while in the employ of the Jones and Laughlin Steel Corporation.

The plaintiff called several relatives of the insured, who testified that he had been failing in health, and appeared emaciated, sick, weak, and thin. His daughter, Mrs. Zgurich, however, when asked if her father lost any time, replied: "A. No, he made sure he would try to be at work. Q. And did he go to work steadily? A. He certainly did."

Lester F. Burke, the head clerk of the employer who had charge of, and supervision over, the group insurance, testified that if the insured had been off work for sickness more than seven days at one time, he would have been required to report that fact and have a medical examination by the company doctor before returning to work; that Nauyok's records did not disclose any absence on account of sickness since an injury he received in 1928. There was no testimony that Nauyok did not work regularly before he was discharged.

The only medical testimony offered was that of Dr. Mateer, who saw Nauyok for the first time on February 2, 1940, when he was past 61 years of age and a year after he was out of the company's employment. He found Nauyok's lungs seriously affected and that he had an arterio-sclerotic heart. When asked to state what length of time prior to February 2, 1940, the insured had been unable to engage in occupation, he replied: "That would be a difficult question. I don't see how I could be sure about that, but I do feel sure he had been very sick for months." Later he expressed the opinion that between 1937 and 1940 Nauyok was not able to do any work that would require the least exertion, but he did not say, and was not asked to state, definitely whether Nauyok was permanently disabled prior to December 8, 1938.

The appellant is confronted with facts establishing beyond question that the insured actually did work until January 23, 1939; they prevail over the contrary

opinions of lay and medical witnesses: *Cobb v. Mutual Life Ins. Co. of New York,* 151 Pa. Superior Ct. 654, 30 A. 2d 611. It faces a further serious obstacle in the failure of the insured to give immediate notice of sickness and *furnish proof* of such sickness within 30 days thereafter. Admittedly, the first notice received by the insurance company of any sickness was more than three years after the termination of employment and suit was not brought until more than four years from that date.

This case is governed by our decision in *Ercole v. Metropolitan Life Ins. Co.,* 155 Pa. Superior Ct. 549, 39 A. 2d 293, where we were considering a policy containing the same provisions as this one. Ercole was laid off due to lack of work on May 17, 1938, but was continued on the payroll until November 26, 1938. The first notice of any claim was when suit was brought four years and five months later. It will be observed that the basic facts are analogous to those in the instant case and similar legal questions were there considered. We held the limitations set forth in the insurance policy are mandatory unless there is a waiver that would relieve the plaintiff from compliance with the terms of the policy. There was no proof there or here of a waiver.

The appellant also seeks to recover for death benefits. Little need be said in answer to this claim as under the distinct terms of the policy, life insurance was only payable if the death of the insured occurred while in the employ of the Jones and Laughlin Steel Corporation. That admittedly did not happen.

The appellant places reliance upon *Wuerfel v. Metropolitan Life Ins. Co.,* 343 Pa. 291, 22 A. 2d 747, and *Pearlman v. Metropolitan Life Insurance Company,* 336 Pa. 444, 9 A. 2d 432, and kindred cases, which hold that policies of this type must receive a reasonable construction and that total disability to engage in any or every employment for wages or profit does not require the insured to be a helpless invalid before he is en-

titled to the benefits of the policy; that "total disability" contemplates inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing. The performance of a few trivial and desultory acts of a limited character does not bar a recovery. Those cases are not applicable here as the proof showed, as above stated, that after Nauyok attained the age of 60 he unquestionably continued for six weeks his daily employment. In such circumstances how can it be maintained that he was totally and permanently disabled?

We are in entire accord with the court's action in entering judgment for defendant. Judgment is affirmed.