Concurring Opinion by
Hoffman, J.:
This appeal involves the question of whether the trial judge erred in sustaining appellee’s objection to a question asked appellee on cross-examination for reason that it called for a conclusion by a witness.
On December 22, 1966, at or about 5:15 p.m. on King Street in East Stroudsburg, plaintiff’s decedent, Ricky Lee Strausser, age 2 years and 10 months, was struck and killed by an automobile driven by the appellee, Louis Charles Strunk. Suit was commenced by decedent’s personal representative on December 15, 1967. A trial was held before a jury on February 17, 1971, and a verdict was returned in favor of the defendant-appellee. Testimony during the trial disclosed that on the evening in question the weather was clear and the sky was dark. There was snow on the ground from a previous snowstorm, and snowbanks were present on each side of King Street, particularly in front of the Strausser residence facing the street. The testimony at trial established that just before the accident the decedent had been playing in front of the house in the vicinity of the snowbanks. Appellee testified that he was driving his motor vehicle with his lights on low beam, and that he did not see the child before, during or after the impact, which occurred at the right front fender of appellee’s car. Decedent was unattended at the time of the accident, and there were no -witnesses to the accident.
*539 On direct examination, appellee admitted hitting the child. The following excerpted portion of the cross-examination illustrates the conditions and circumstances leading up to the accident: “Q. [Plaintiff’s counsel]: At what speed were you traveling? A. About 35 miles an hour. ... Q. At the time you were operating your automobile on King Street, was it dark or getting dark? A. It was dark. . . . Q. The skies were cloudy? Is that a fair statement? A. I believe they were. Q. Can you describe the roadway? A. It had snow on it, snow patches and ice patches on the shoulder of the road. Q. What about the roadway itself, the travel portion? A. It was straight. Q. Was there anything on it? A. No, mostly clear. Q. It was mostly clear? A.Yes. . . . Q. You had your lights on? A. Yes. Q. Were they working properly? A. Yes, they were. Q. Is it true to say that King Street is a straight road, essentially, from about where Race Street intersects it? A. Yes. . . . Q. In that vicinity, headed toward Stokes Avenue, or to the right of the map as you look at it, would it be fair to say the road is straight and level? A. Yes, it would. ... Q. Now in the same vicinity, Louis, there were no obstructions to your view or line of sight as you were traveling toward Stokes Avenue, is that correct? A. Yes. Q. Your car was in good working order? A. Yes, it was.” Having developed all the facts necessary for the jury to ascertain the conditions under and the manner in which appellee was driving, plaintiff’s counsel then posed the following question, after which the disputed colloquy took place: “Q. I ask you to answer this question in your own words, and think carefully before you answer it. You have described in your testimony here that you were on a straight stretch of road, that your lights were on, and there was no obstruction to your view. Can you tell me what reason you have for not having seen the *540 boy, if you know, why you didn’t see Mm? Me. Williams : Your Honor, I object to that. The Couet : We will sustain the objection. It calls for a conclusion by the witness.” Although appellant contends that the trial court erred in sustaining appellee’s objection, I believe the Court was correct in its ruling. Setting aside any alternative objections that the form of the question was either argumentative or that it was framed as a hypothetical question directed at a non-expert, it is evident that the question as posed invaded the province of the jury to determine ultimate issues.
The basic rule as to the admissibility of opimon evidence is that if all of the facts and circumstances upon which a witness bases his opinions are before a jury, and the jury is in as good a position as the witness to draw inferences and deductions from such facts and circumstances, then the opinion of the witness is inadmissible. Jamison v. Ardes, 408 Pa. 188, 182 A. 2d 497 (1962); Buehler v. Commonwealth, 407 Pa. 330, 180 A. 2d 898 (1962). Thus, whenever the circumstances can be fully and adequately described to the jury and are such that their bearing on the issue can be estimated by all persons without special knowledge or training, opimons of witnesses, whether expert or non-expert, are not admissible. Graham v. Pennsylvania Co., 139 Pa. 149, 21 A. 151 (1891); Delair v. McAdoo, 324 Pa. 392, 188 A. 181 (1936); Cobb v. Mutual Life Ins. Co., 151 Pa. Superior Ct. 654, 30 A. 2d 611 (1943).
The recent case of Starner v. Wirth, 440 Pa. 177, 269 A. 2d 674 (1970), poses the identical issues presented in this appeal. In that case, the litigating parties were involved in a motor vehicle accident. At a pretrial deposition of appellant, opposing counsel asked, “Do you feel you were traveling at an excessive rate of speed in view of the nature of the road, now that you look back?” In reliance on the stipulation made *541 by counsel to reserve all objections “except as to the form of the question” to the time of trial, no objection to the question was made, and Wirth answered, “I would say a little bit.”
During cross-examination of Wirth at trial, he was asked, “Now, as you have reflected upon that kind of road, and the speed to which you were going, Mr. Wirth, would you tell us whether or not the speed at which you were going just prior to the accident, was or was not excessive?” Objection to this question on the ground that it called for a conclusion was sustained.
The Court stated at page 182 of the opinion: “In resolving this ultimate issue we must first decide if the opinion evidence rule, which excludes the opinion of third-party witnesses, applies with equal force to an adverse party. . . . [ S ]uch testimony is superfluous: ‘witnesses having no special shill, who have had personal observation of the matter in hand, may, as a result of their personal observation, have drawn inferences or made interpretations which the tribunal could equally well make from the same data of personal observation, if laid before them; and thus if it is possible to detail these data fully for the tribunal, the witness’ own inferences are superfluous.’ . . . There can be no doubt that this policy would make no distinction between witnesses or parties, adverse or otherwise nor would any differentiations be warranted by any of the erroneous theories sometimes advanced for the opinion evidence rule. YII Wigmore on Evidence, §§1919-22 (3d ed. 1940). The circumstances of the accident— several estimates of speed, the condition of the road, the time of day, etc. — were fully detailed to the jury, which was then in a position to decide if the speed was ‘excessive’. Any other testimony in this regard would be superfluous, and hence, excludable under the opinion evidence rule.” (Emphasis added.)
*542 Appellee in the instant case had testified extensively and clearly on the facts and circumstances surrounding the accident. To ask appellee to speculate as to why he might not have seen plaintiff’s decedent would not only have elicited a response of mere conjecture, but it would, for the same reasons as in Starner v. Wirth, supra, have been superfluous and an invasion of the province of the jury to determine ultimate issues. First Methodist Episcopal Church v. Bangor Gas Co., 388 Pa. 115, 130 A. 2d 517 (1957); see also Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A. 2d 657 (1964).
Appellant argues that even though the question may have called for a conclusion, appellee should have been permitted to answer it since the same question, asked at a pre-trial deposition, had not been objected to at that time.[1] Prior to the taking of the deposition, it appears that counsel had stipulated that objections would be reserved to trial. The Court in Starner v. Wirth, supra, rejected the same contention, saying, “[a]ssuming, a/rguendo, that the reason for the objection could have been removed if made at the time of the taking of this deposition, we believe the stipulation is controlling and gives full effect to the timely objection at trial. ... It then follows that the exclusion of the admission was correct and the order granting a new trial based solely on the ground of this ‘improper’ exclusion should be reversed.” [at 440 Pa. 183]. For the *543 same reasons as stated in Starner, I believe that appellee’s objection at trial was not only proper but timely.
Therefore, I concur in the result of the Majority affirming the ruling of the trial court.
Spaulding, J., joins in this concurring opinion.

 Appellee was asked the following question at deposition: “Q. [Plaintiff’s counsel] Louis, again I ask you to answer in your own words, and think carefully, if you can answer this question. You told me that you were on a straight stretch of road, your lights were on and there was no obstruction to your view. Can you tell me what reason you have for not having seen the boy, if you know, why you didn’t see him? A. [Appellee] I can’t say why I didn’t see him. What I described to you I should have seen him, but I never did.”

 “The Opinion rule day by day exhibits its unpractical subtlety and its useless refinement of logic. Under this rule we accomplish little by enforcing it, and we should do no harm if we dispensed with it. We accomplish little, because, from the side on which the witness appears and from the form of the question, his answer, i.e., *544 bis opinion, may often be inferred. We should do no harm, because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross-examination . . . Add, finally, the utter impossibility of a consistent application of the rule, and the consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice. It has done more than any one rule of procedure to reduce our litigation towards a state of legalized gambling.” VII Wigmore on Evidence §1929, pp. 26, 27 (3d ed. 1940).